512 P.2d 55

**STATE of New Mexico, Petitioner,**

v.

**Thomas Jon GUNZELMAN, Respondent.**

**No. 9619.**

Supreme Court of New Mexico.

May 25, 1973.

On Rehearing July 6, 1973.

David L. Norvell, Atty. Gen., Ronald Van Amberg, Asst. Atty. Gen., Santa Fe, for petitioner.

Douglas T. Francis, Louis G. Stewart, Jr., Albuquerque, for respondent.

PER CURIAM:

Upon consideration of the motion for rehearing, the original opinion heretofore filed is withdrawn and the following substituted therefor.

### OPINION

MONTOYA, Justice.

Defendant was convicted of the crime of burglary. On appeal to the Court of Appeals, defendant sought to overturn his conviction because of the trial court's failure to instruct on an essential element of the crime. The Court of Appeals reversed the conviction. State v. Gunzelman, 84 N. M. 451, 504 P.2d 1084 (Ct.App.1972).

■ The State filed a petition for a writ of certiorari in this case to review the decision of the Court of Appeals. The writ was granted because of conflict with prior decisions of this Court and because of the substantial public interest in the case and its great importance to the administration of our criminal justice system. Our decision to grant a writ of certiorari to the Court of Appeals on behalf of the State was a departure from past decisions of this Court. Because it is important to the administration of criminal justice in this State, we will discuss the reasons why certiorari was granted before we reach the merits of the case.

"The office of the common-law writ of certiorari is to bring before the court for inspection the record of the proceedings of an inferior tribunal in order that the superior court may determine from the face of the record whether the inferior court has exceeded its jurisdiction, or has not proceeded according to the essential requirements of the law. * * *"

Annot. 91 A.L.R.2d 1095, 1096, Certiorari, Right of Prosecution.

■ Generally, the state or the prosecution cannot appeal or bring error proceedings from a judgment in favor of the defendant in a criminal case, in the absence of a constitutional provision or statute conferring such a right.

Considering the background of the generally accepted view of the limited right of appeal in criminal cases by the prosecution, we need to examine the pertinent constitutional and statutory provisions existing in New Mexico.

While it is more often the case that state statutes or constitutional provisions which set forth the scope or function of the writ of certiorari are found together with pro-

visions relating to the right of the state to appeal or bring error in criminal matters, this is not completely the case in New Mexico.

There are constitutional provisions which provide for this Court's jurisdiction in the instant case. N.M.Const. art. VI, § 2, states:

"Appeals from a judgment of the district court imposing a sentence of death or life imprisonment shall be taken directly to the Supreme Court. In all other cases, criminal and civil, the Supreme Court shall exercise appellate jurisdiction as may be provided by law; provided that an aggrieved party shall have an absolute right to one appeal."

Article VI, § 3, states:

"The Supreme Court shall have original jurisdiction in quo warranto and mandamus against all state officers, boards and commissions, and *shall have a superintending control over all inferior courts; it shall also have power to issue writs of* mandamus, error, prohibition, habeas corpus, *certiorari,* injunction *and all other writs necessary or proper for the complete exercise of its jurisdiction and to hear and determine the same.* Such writs may be issued by direction of the court, or by any justice thereof. Each justice shall have power to issue writs of habeas corpus upon petition by or on behalf of a person held in actual custody, and to make such writs returnable before himself or before the Supreme Court, or before any of the district courts or any judge thereof." (Emphasis added.)

Article VI, § 2, supra is the genesis of this Court's appellate jurisdiction, as it provides that " * * * the Supreme Court shall exercise appellate jurisdiction as may be provided by law; * * *." Therefore, we need to examine the applicable statutes. Section 16–7–14, N.M.S.A., 1953 Comp. (1972 Interim Supp.), states:

"A. The appellate jurisdiction of the Supreme Court is coextensive with the state and extends to all cases where appellate jurisdiction is not specifically vested by law in the court of appeals.

"B. In addition to its original appellate jurisdiction, the Supreme Court has jurisdiction to review by writ of certiorari to the court of appeals any civil or criminal matter in which the decision of the court of appeals:

"(1) is in conflict with a decision of the Supreme Court;

"(2) is in conflict with a decision of the court of appeals;

"(3) involves a significant question of law under the Constitution of New Mexico or the United States; or

"(4) involves an issue of substantial public interest that should be determined by the Supreme Court.
" * * *."

This statute was interpreted before amendment in State v. Paul, 80 N.M. 746, 461 P.2d 228 (1969). The only difference in the former version of § 16–7–14, supra, is that it stated:

" * * * [T]he Supreme Court has jurisdiction to review by writ or certiorari to the court of appeals *any matter* * * *." (Emphasis added.)

As mentioned, the amendment changed this to " * * * any *civil or criminal* matter * * *." (Emphasis added.)

State v. Paul, supra, held that the State had no right to review, by a writ of certiorari, a decision of the Court of Appeals, reasoning that if the State has no right to appeal it should not be permitted to accomplish by certiorari what it cannot do by appeal. Because we do not believe the change from "any matter" to "any civil or criminal matter" alters the meaning of § 16–7–14, supra, since the former is presumed to include the latter, we re-examine our decision in State v. Paul, supra.

In State v. Paul, supra, even though the State based its request for writ of certiorari on the four grounds required by § 16–7–14, supra, the writ was denied. The Court noted that § 21–10–2.1, N.M.S.A., 1953

Comp. (Repl.Vol. 4, 1970), makes no provision for the State to appeal to the Supreme Court where the case had gone to trial, defendant convicted, and such conviction reversed by the Court of Appeals. Since then § 21–10–2.1, supra, has been replaced. See § 21–10–2.1, N.M.S.A., 1953 Comp. (1972 Interim Supp.). The new statute, like the old, makes no provision for an appeal to this Court in the situation presented to the Court in State v. Paul, supra, or in the case at bar. The Court, in State v. Paul, supra, 80 N.M. at 747, 461 P.2d at 229, reasoned that:

"The State should not be permitted to accomplish by certiorari what it cannot do by appeal. The right of the State to prosecute error in a criminal case exists only when such right is conferred by statute. [Citations omitted.]

"Where the State has no right to appeal from an order granting defendant a new trial, certiorari could not be granted as a substitute. To bring up the matter by certiorari, would be to accomplish by indirection what the statute does not expressly permit. [Citation omitted.]"

It was this same reasoning that prompted the United States Supreme Court to deny an application by the United States for a writ of certiorari to review a Circuit Court of Appeals' decision which reversed a lower court conviction in a criminal case. United States v. Dickinson, 213 U.S. 92, 29 S.Ct. 485, 53 L.Ed. 711 (1909).

In United States v. Johnston, 268 U.S. 220, 45 S.Ct. 496, 69 L.Ed. 925 (1925), the Attorney General argued that the statute which precluded the United States from seeking certiorari, referred to in Dickinson, supra, had been amended in such a way as to show that Congress intended that the United States could bring criminal cases to the Supreme Court from the Circuit Court of Appeals. The Supreme Court, without discussing that question, passed on the merits of the case, observing that because the "decision" was of "grave importance to the administration of the revenue laws" certiorari would be granted.

See also United States v. Gulf Ref. Co., 268 U.S. 542, 45 S.Ct. 597, 69 L.Ed. 1082 (1925).

The statute relating to the jurisdiction of the United States Supreme Court, with respect to the judgments of the Courts of Appeal, provides that:

"Cases in the courts of appeal may be reviewed by the Supreme Court by the following methods:

"(1) By writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after rendition of judgment or decree;

"* * *."

28 U.S.C.A., § 1254 at 49 (1966). Thus, the question seems settled in favor of the federal government's right to seek certiorari by the language of the present statute. The New Mexico statute relating to the Supreme Court's appellate jurisdiction to review by certiorari decisions of the Court of Appeals is very similar. See § 16–7–14, supra.

There is no reason to believe that the legislature, in passing § 16–7–14, supra, and in its subsequent amendment, intended anything other than to do that which the explicit terms of the statute provide: "* * * review by writ of certiorari to the court of appeals any civil or criminal matter * * *" meeting the requirements of § 16–7–14, supra. Furthermore, there is no reason to assume that the legislature, in limiting the State's right to appeal in a criminal case, intended a like limitation in the granting of a writ of certiorari. On the contrary, § 16–7–14, supra, indicates that these remedies are to be considered separately. Observing that any limitation on the right of the State to apply for a writ of certiorari must arise from some statutory limitation, the Supreme Court of Florida, in State v. Harris, 136 So.2d 633 (Fla.1962), rejected the contention that a statute limiting the right of the State to appeal in criminal cases operated to limit the right of the State to seek certiorari. See also State v. Whitney, 69 Wash.2d 256, 418 P.2d 143 (1966), wherein

the Supreme Court of that State granted a writ of certiorari to review the correctness of an order excluding an offer of fingerprint evidence which was based on the erroneous construction of a statute. The Washington Court reasoned that the public had an important and justified interest in the proper administration of criminal justice and that a thwarting of that interest was apt to follow if the erroneous construction of the statute by the trial court was not corrected.

In a case decided in 1966, the District Court of Appeals of Florida granted a writ of certiorari on the petition of the State to review a judgment of the Circuit Court of Dade County, acting in its appellate capacity, on the grounds that the Circuit Court failed to follow established principles of law applicable to the facts of the case. State v. Smith, 193 So.2d 23 (Fla.App. 1966).

Although our reason for granting the writ of certiorari is based upon § 16–7–14, supra, it should be noted that art. VI, § 3, supra, in addition to the constitutional authority of art. VI, § 2, supra, and § 16–7–14, supra, states that this court

"* * * shall have a superintending control over all inferior courts; it shall also have power to issue writs of * * * certiorari * * * and all other writs necessary or proper for the complete exercise of its jurisdiction and to hear and determine the same. * * *"

In State v. Roy, 40 N.M. 397, 421, 60 P.2d 646, 661 (1936), this Court compared art. VI, § 2, and art. VI, § 3. It stated:

"Here we find three separate and distinct grants of jurisdiction: (1) The appellate jurisdiction; (2) the superintending control over inferior courts; and (3) the original jurisdiction to be exercised by certain writs."

The Court further stated that:

"The superintending control over inferior courts does not limit this court to the promulgation of rules of court which have for their purpose the regulation of matters of relatively minor importance, which merely govern the everyday routine of courts and enable them to act as such. * * * We are here concerned with the more important rule of adjective law governing the trial of lawsuits and furnishing the machinery by which litigants may secure effective enforcement of their substantive rights. * * *"

Quoting from People ex rel. Green v. Court of Appeals of Colorado, 51 L.R.A. 111, the Court stated (40 N.M. at 422–423, 60 P.2d at 662):

"* * * 'The power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur it will be found able to cope with them. And, if required, the tribunals having authority to exercise it will, by virtue of it possess the power to invent, frame, and formulate new and additional means, writs, and processes whereby it may be exerted.'"

See also In re Little, 103 R.I. 301, 237 A. 2d 325 (1968).

We, therefore hold that this Court has the authority to issue writs of certiorari directed to the Court of Appeals in a criminal case where the conditions of § 16–7–14, supra, are met. Furthermore, this Court's original jurisdiction to issue writs of certiorari, as provided for in art. VI, § 3, supra, leaves no doubt as to the power of the Court to issue such writs.

In view of the foregoing, State v. Paul, supra, is hereby overruled. To the extent that any other decisions are inconsistent with the holding of this Court herein, they are no longer controlling.

**300**

We now discuss the merits of the case.

The trial court below instructed the jury as follows:

"1. The material allegations of the indictment necessary to be proven to your satisfaction and beyond a reasonable doubt before you can find the defendant guilty are that * * * THOMAS JON GUNZALMAN, did without authority or permission enter the dwelling house of Rex Shurtleff, * * * with intent to commit a theft therein."

In addition, the court instructed the jury that:

"7. To constitute criminal intent it is not necessary that there should exist an intent to violate the law or to do a wrong. Criminal intent exists whenever a person intentionally does that which the law declares to be a crime, even though he may not know that he is committing a crime or that his act is wrong."

Section 40A–16–3, N.M.S.A., 1953 Comp. (2d Repl.Vol. 6, 1972), provides:

"Burglary consists of the unauthorized entry of any * * * dwelling * * * with the intent to commit any felony or theft therein."

No objection was made at the trial to the trial court's instructions and the objection to instruction No. 7, supra, was first made on appeal. The Court of Appeals held that such failure to give an instruction containing an essential element of the crime charged, to-wit, criminal intent, is jurisdictional and may be raised for the first time on appeal. We agree that such failure to properly instruct on all of the essential elements of the crime charged is jurisdictional and may be raised for the first time on appeal. See State v. Walsh, 81 N.M. 65, 463 P.2d 41 (Ct.App.1969). Compare Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330 (1945).

Thus, the sole remaining issue before this Court is whether the trial court correctly instructed the jury on the requisite intent for the crime of burglary.

In State v. Lopez, 80 N.M. 599, 606, 458 P.2d 851, 858, (Ct.App. 1969), cert. denied, 398 U.S. 942, 90 S.Ct. 1860, 26 L.Ed.2d 279 (1970), the Court of Appeals was confronted with an instruction on aggravated burglary. The statute which defines aggravated burglary contains the same language as § 40A–16–3, supra, " * * * with intent to commit any felony or theft therein * * *." See, § 40A–16–4, N.M. S.A., 1953 Comp. (2d Repl.Vol. 6, 1972). In Lopez, supra, the Court of Appeals said:

"Point K states the trial court erred in failing to include in the initial instruction dealing with the elements of the various offenses charged, the element of intent. There is no support for this contention in the record. The offenses were set out in the instructions according to * * * § 40A–16–4, * * *. *Instructions which substantially follow the language of the statute are sufficient.* [Citation omitted.]" (Emphasis added.)

This Court, in State v. Serrano, 74 N.M. 412, 394 P.2d 262 (1964), approved instructions which conformed to the requirements of the statute under which the defendant was being tried.

The Court of Appeals, in its majority opinion herein, did not consider the effect of the trial court's instruction No. 1, supra, which we believe satisfies the requirement of advising the jury of the essential element of intent necessary in this case. The Court of Appeals apparently concentrated on instruction No. 7, supra, which deals with general "criminal intent." Because the instruction states that it is not necessary " * * * that there should exist an intent to violate the law or to do a wrong * * *" the Court of Appeals held that:

"* * *. This is an incorrect statement of the law. The specific intent to commit ' * * * any felony or theft therein' is an essential element of the crime of burglary. The quoted instruction does not cover that specific intent."

The Court of Appeals, as pointed out, did not consider the effect of instruction No. 1, supra, in considering the issue of intent involved in a burglary charge. The instructions must be considered as a whole, and we have held that instructions are sufficient which substantially follow the language of the statute or use equivalent language. State v. Maestas, 63 N.M. 67, 313 P.2d 337 (1957). See also State v. McFerran, 80 N.M. 622, 459 P.2d 148 (Ct. App.1969).

We invite attention to the recent case in the Court of Appeals, State v. Baca, 85 N.M. 55, 508 P.2d 1352 (Ct.App.1973), where the Court followed and cited State v. Maestas, supra, and State v. Lopez, supra.

■ It is well settled that the crime of burglary is a crime requiring a specific mens rea. Thus, an instruction on specific intent or specific mens rea is required. When the terms of the statute itself define the requisite intent required, then an instruction which follows the words of the statute is sufficient.

■ Section 40A–16–3, supra, proscribes "* * * unauthorized entry of any * * * dwelling * * * with the intent to commit any felony or theft therein." The trial court instructed as follows: "* * * did without authority or permission enter the dwelling house * * * with intent to commit a theft therein." It follows that the need for an additional instruction on general criminal intent was unnecessary as a person is presumed to intend the logical consequences of his actions. See Ricard v. State, 181 So.2d 667 (Fla.App.1966); Allen v. State, 124 So.2d 741 (Fla.App.1960); State v. Darling, 208 Kan. 469, 493 P.2d 216 (1972); State v. Decker, 207 Kan. 374, 485 P.2d 171 (1971); State v. Robinson, 193 Kan. 480, 394 P.2d 48 (1964); Kansas City v. Martin, 369 S. W.2d 602 (Mo.App.1963); Stallings v. State, 476 S.W.2d 679 (Tex.Cr.App.1972); Gibson v. State, 55 Wis.2d 110, 197 N.W. 2d 813 (1972); and Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1878).

■ Though the trial court's instruction No. 7 is not consistent with instruction No. 1, which satisfied the language of § 40A–16–3, supra, the defendant did not object to this instruction, nor show any prejudice thereby. As such, it is not subject to review. State v. Herrera, 82 N.M. 432, 483 P.2d 313 (Ct.App.1971).

■ We, therefore, hold that § 40A–16–3, supra, defines the element of intent constituting the crime of burglary and an instruction which follows the language of the statute adequately instructs the jury on the specific criminal intent required.

It is to be noted that the Court of Appeals has now overruled its opinion in the instant case. See State v. Fuentes, 85 N. M. 274, 511 P.2d 760 (Ct.App.1973).

In view of the foregoing, we reverse the decision of the Court of Appeals and remand the case to them for consideration of other points argued on appeal and not ruled upon in their earlier decision.

It is so ordered.

McMANUS, C. J., and OMAN, STEPHENSON and MARTINEZ, JJ., concur.