This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41568**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ALEXANDER RAY DIAZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Eric Orona, Assistant Solicitor General
Albuquerque, NM

for Appellee

Wadsworth Law, LLC
Mathew R. Wadsworth
Rio Rancho, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Chief Judge.**

**{1}** Defendant Alexander Ray Diaz appeals his convictions for one count of third-degree criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13(C)(1) (2003); and one count of fourth-degree CSCM, contrary to Section 30-9-13(D)(1). Defendant challenges the sufficiency of the evidence supporting each of his CSCM convictions and additionally argues that his fourth-degree CSCM conviction resulted from a fundamental error in the jury instruction. We affirm.

**Discussion**

**{2}** Because this is a memorandum opinion, we omit a background section and offer only those facts necessary to resolve the issues raised on appeal. We first address Defendant's sufficiency of the evidence arguments before turning to his jury instruction argument.

**I.      Sufficient Evidence Supports Defendant's Third- and Fourth-Degree CSCM Convictions**

**{3}** Defendant claims there was insufficient evidence to allow a reasonable jury to convict him for third- and fourth-degree CSCM. For his third-degree CSCM conviction, he argues that the State failed to provide sufficient evidence that Victim was twelve years old at the time of the offense. For his fourth-degree CSCM conviction, he argues that the State failed to provide sufficient evidence that he used *physical force*[1] at the time of the offense. We address each argument in turn.

**{4}** We review sufficiency of the evidence claims "with deference to the jury's verdict, viewing the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Ward*, ___-NMSC-___, ¶ 18, ___ P.3d ___ (S-1-SC-40503, Mar. 16, 2026) (alteration, internal quotation marks, and citation omitted). "A reasonable inference is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." *State v. Revels*, 2025-NMSC-021, ¶ 57, 572 P.3d 974 (internal quotation marks and citation omitted). "We do not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence," nor do we "weigh the evidence or substitute our judgment for that of the fact[-]finder so long as there is sufficient evidence to support the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (alterations, internal quotation marks, and citation omitted). "So long as a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions." *Ward*, ___-NMSC-___, ¶ 18 (internal quotation marks and citation omitted). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alterations, internal quotation marks, and citation omitted).

**A.      Defendant's Third-Degree CSCM Conviction**

**{5}** To convict Defendant of third-degree CSCM, the jury was instructed that it had to find beyond a reasonable doubt that:

1.      [D]efendant touched or applied force to the vulva of [Victim];

---

1For ease of reading, we italicize the statutory phrase *physical force* throughout the rest of this opinion instead of using quotation marks, where *physical force* is not part of a larger quotation.

2.     [Victim] was a child under the age of thirteen (13);

3.     This happened in New Mexico on or between August 17, 2019 and August 16, 2020.

**{6}**     The only element Defendant disputes is Victim's age. Defendant argues that Victim's testimony that he first touched her around Halloween 2019—when Victim was twelve—was implausible and contradicted by Victim's mother's testimony and by Defendant's statements to law enforcement. Therefore, Defendant argues no reasonable jury could have found her testimony credible. Consequently, according to Defendant, the only reasonable inference is that Victim was thirteen when he first touched her inappropriately. We disagree.

**{7}**     Contrary to Defendant's argument, Victim's testimony, Victim's mother's testimony, and Defendant's statements to law enforcement support a finding that Victim was twelve when Defendant first touched her inappropriately. Victim testified to the following timeline and events. Victim first met Defendant, a coworker of Victim's father, at her family's house sometime in 2018. Approximately six months later, Defendant started living with Victim's family. The first time Defendant inappropriately touched Victim was around Halloween in 2019—when she was twelve years old and in seventh grade. At that time, Defendant and Victim were sitting next to each other on the couch watching television. Defendant had his hand on Victim's knee and started moving his hand down her leg, before rubbing Victim's vagina. Victim testified that she then moved away because she "didn't want [Defendant] to touch [her]."

**{8}**     Victim's mother testified to the following timeline and events. In 2018, Victim's mother's family—her fiancé and her three children, including Victim—lived in a house on Stanton Avenue in Las Cruces, New Mexico. Although not entirely clear, Victim's mother appeared to indicate that the family was "going to be moving to Sycamore" at the end of 2018. In 2019, they moved to a house on Sycamore Drive, also in Las Cruces. They lived there from 2019 until sometime in 2020. At the Sycamore house, Defendant was living with Victim's family "the majority of the time."

**{9}**     Defendant told officers during an interview that he met Victim when he "was going to turn twenty-one," but the relationship "didn't start until [Defendant] was going to turn twenty-two." We note that Defendant turned twenty-one on August 8, 2018. Defendant claimed Victim was thirteen when the "sexual stuff started to happen."

**{10}**     Viewing this evidence in the light most favorable to the guilty verdict, the jury could have reasonably found that Victim met Defendant at her family's house on Stanton Avenue in 2018—sometime between July and early August, when Defendant "was going to turn twenty-one." Approximately six months later—sometime in 2019—Defendant started living with Victim's family after they moved to their house on Sycamore. Defendant's relationship with Victim began sometime around July or August 2019, when Defendant "was going to turn twenty-two." A few months later, around

Halloween of 2019, Defendant touched Victim inappropriately. Victim was twelve at that time.[2] This evidence was sufficient to convict Defendant of third-degree CSCM.

## B.      Defendant's Fourth-Degree CSCM Conviction

**{11}**    The State also charged Defendant with fourth-degree CSCM under Section 30-9-13(D)(1), which criminalizes CSCM "of a child thirteen to eighteen years of age perpetrated with force or coercion." "Force or coercion" has five enumerated definitions. *See* NMSA 1978, § 30-9-10(A) (2005). Relevant here, is that "force or coercion" means "the use of physical force or physical violence." Section 30-9-10(A)(1). In this case, the jury was instructed that it had to find beyond a reasonable doubt that

1.      [D]efendant touched or applied force to the breasts of [Victim];

2.      [D]efendant used physical force;

3.      [Victim] was at least thirteen (13) but less than eighteen (18) years old;

4.      This happened in New Mexico on or between August 17, 2020 and March 27, 2021.

Defendant only disputes that he used *physical force* under Section 30-9-13(D)(1). Specifically, Defendant argues that his actions do not satisfy the *physical force* required to sustain a fourth-degree CSCM conviction because our case law requires *physical force* to be predicated on more than just lifting Victim's shirt, kissing her stomach, and giving her three hickeys on her chest. A contrary result, Defendant argues, would either require us to (1) apply different definitions of *physical force* to different subsections that use the same term, or (2) define *physical force* in a manner that would lead to absurd results.[3]

**{12}**    We first consider the meaning of *physical force* in the context of the "force or coercion" required under the CSCM statute. To the extent this requires statutory interpretation, we apply a de novo review. *See Holt*, 2016-NMSC-011, ¶ 9 (stating that the questions of statutory construction are reviewed de novo). *Physical force* is not defined by statute and is itself one of the enumerated statutory definitions of the term "force or coercion." Section 30-9-10(A)(1). In the context of sexual offenses, this Court has determined that *physical force* "does not require a particular quantum of force." *State v. Calderon*, 2026-NMCA-026, ¶ 27, 585 P.3d 530 (alteration, internal quotation

---

[2]Despite Defendant's apparent general candor with law enforcement, the jury was free to disregard his statement that the "sexual stuff started to happen" when Victim was thirteen. *See Ward*, ___-NMSC-___, ¶ 18 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." (internal quotation marks and citation omitted)).
[3]Throughout his briefing, Defendant appears to use the terms "force or coercion" and *physical force* interchangeably. For the sake of clarity—and because the only "force or coercion" at issue in this case relates to Defendant's use of *physical force*—we use *physical force* instead of "force or coercion" where appropriate.

marks, and citation omitted).[4] "The issue is not how much force or violence is used, but whether the force or violence was sufficient to negate consent." *Calderon*, 2026-NMCA-026, ¶ 38 (internal quotation marks and citation omitted). The requisite *physical force* "need only be sufficient to support a finding that the sexual activity was against the victim's will; it need not be substantially different or substantially greater than the force inherent in consensual sexual activity." *Id.* ¶ 27 (internal quotation marks and citation omitted).

**{13}** Defendant, however, contends that if any degree of touching constituted sufficient *physical force* to sustain his fourth-degree CSCM conviction, it would lead to untenable results. Defendant misunderstands our case law. It is not the case that any degree of touching necessarily constitutes *physical force*. Rather, a *physical force* determination is context dependent and "can be minimal, . . . so long as the jury finds that, considering all of the circumstances, the victim did not consent." *Calderon*, 2026-NMCA-026, ¶ 26. We are unpersuaded by Defendant's contention that our case law, which has addressed arguably more severe exertions of *physical force*, indicates that the *physical force* Defendant used here is legally insufficient. None of the cases Defendant cited adopt a higher threshold of *physical force* than is present here. Those cases simply apply the threshold this Court has adopted to the particular facts and circumstances before the jury in those cases. We also find unconvincing Defendant's argument that his actions—against a "willing participant"—cannot constitute *physical force* unless we either apply different definitions of *physical force* to different statutory subsections that use the same term or otherwise define *physical force* in a manner that would lead to absurd results.

**{14}** Defendant's argument rests upon mischaracterizing Victim as a "willing participant." In this case, the jury heard Victim testify that when she was only thirteen, Defendant lifted up Victim's shirt, kissed her "down [her] stomach," touched her breasts, and gave her hickeys on her chest. Victim testified that she did not ask Defendant to do this, did not tell Defendant it was okay to do this, did not want Defendant to do this, and that it was not okay for Defendant to do this. Although Victim also testified that she was "really affectionate" toward Defendant, enjoyed spending time with him, became "very close to him," and "entered into a relationship with him," this does not establish that Victim was a "willing participant" at the time of the event in question. Moreover, we disregard all evidence and inferences contrary to the jury's verdict. *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532. Presented with this evidence, a reasonable jury could find Defendant's actions constituted *physical force*. Indeed, the record suggests that the jury carefully considered this element when it asked the district court to "please clarify the meaning of physical force in detail." The district court instructed the jury that it "must rely on [its] common sense and the jury instructions," and we presume the jury did just that when it determined that Defendant used *physical force*. *See State v. Benally*, 2001-NMSC-033, ¶ 21, 131 N.M. 258, 34 P.3d 1134 ("We presume that the jury followed the

---

4Although *Calderon* involved the offense of criminal sexual penetration of a minor (child age 13-18) (force or coercion), 2026-NMCA-026, ¶ 1, Defendant and the State contend, and we accept for purposes of this opinion, that "force or coercion" has a uniform meaning throughout the sexual offense statutes. *See* § 30-9-10 (defining "force or coercion" for Section 30-9-10 through NMSA 1978, Section 30-9-16 (1993)).

instructions given by the trial court."). We therefore conclude that sufficient evidence supports Defendant's fourth-degree CSCM conviction.

## II. The Jury Instructions on Fourth-Degree CSCM were not Fundamental Error

**{15}** Finally, Defendant argues that the district court improperly altered the jury instructions on fourth-degree CSCM, which amounted to fundamental error. "The propriety of the jury instructions given by the district court is a mixed question of law and fact requiring de novo review." *State v. Candelaria*, 2019-NMSC-004, ¶ 31, 434 P.3d 297. This issue was not raised at trial, therefore we review for fundamental error. *Id.*; *see* Rule 12-321(B)(2)(c) NMRA. "With regard to jury instructions, the general rule is that fundamental error occurs when the [district] court fails to instruct the jury on an essential element." *State v. Lucero*, 2017-NMSC-008, ¶ 27, 389 P.3d 1039 (alteration, internal quotation marks, and citation omitted). This analysis proceeds in two steps. *See id.* First, we determine "whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citation omitted). If so, we "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice." *Id.* (alteration, internal quotation marks, and citation omitted).

**{16}** We first consider if the district court's jury instruction on fourth-degree CSCM would have confused or misdirected a reasonable juror. As mentioned above, the State charged Defendant with fourth-degree CSCM, pursuant to Section 30-9-13(D)(1). Accordingly, UJI 14-921 NMRA was the relevant jury instruction. UJI 14-921 required the State to prove, in relevant part, that Defendant "used physical force or physical violence."

**{17}** In this case, the jury instruction for Defendant's fourth-degree CSCM conviction slightly deviated from UJI 14-921 by omitting "or physical violence." Defendant argues this "drastically changes the context and meaning of the phrase 'used physical force.'" Specifically, Defendant argues that the phrase *physical force* "by itself is confusing and does not properly define what the jury needed to find to convict [Defendant]." The State counters that because UJI 14-921 uses the disjunctive "or" between "physical force" and "physical violence," the district court's instruction on *physical force* alone was legally sufficient. We agree. As our Supreme Court explained, "the word 'or' should be given its normal disjunctive meaning unless the context of a statute demands otherwise." *Diamond v. Diamond*, 2012-NMSC-022, ¶ 27, 283 P.3d 260 (internal quotation marks and citation omitted); *see State v. Tsosie*, 2011-NMCA-115, ¶ 27, 150 N.M. 754, 266 P.3d 34 (explaining that when a statute lists various alternative definitions for a particular term, the "Legislature's use of the word 'or' indicates that any of the listed definitions" could apply). In this case, nothing in Section 30-9-10(A)(1) suggests that we should deviate from giving "or" its normal disjunctive meaning. Accordingly, under the statute, the State could prove "force or coercion" by demonstrating that Defendant used "physical force or physical violence." Additionally, the absence of one of these phrases does not alter the meaning of the other.

**{18}** As the State observes, the evidence it presented did not suggest Defendant employed physical violence to commit the CSCM; consequently, the instruction's omission of "physical violence" accurately conveyed the law to the jury. *See* UJI-Criminal General Use Note ("[A]n elements instruction may only be altered when the alternation is adequately supported by . . . the unique circumstances of a particular case."); *see also State v. Doe*, 1983-NMSC-096, ¶ 8, 100 N.M. 481, 672 P.2d 654 ("[I]f the jury instructions substantially follow the language of the statute or use equivalent language, then they are sufficient."); *Caldwell*, 2008-NMCA-049, ¶ 24 ("A jury instruction is proper, and nothing more is required, if it fairly and accurately presents the law." (alteration, internal quotation marks, and citation omitted)).

**{19}** Even if we were to agree that the addition of "or physical violence" would have made the jury instruction clearer, Defendant fails to establish that the given jury instruction constituted fundamental error. *See State v. Astorga*, 2016-NMCA-015, ¶ 5, 365 P.3d 53 ("The burden of demonstrating fundamental error is on the party alleging it, and the standard of review for reversal for fundamental error is an 'exacting' one." (citations omitted)). To the extent Defendant asserts "physical violence" was a required element of his fourth-degree CSCM conviction, we disagree. As explained above, "physical violence" is an alternative to *physical force* and is therefore not necessarily a required element.[5]

**{20}** We also disagree with Defendant that the jury likely convicted him because they were confused by the omission of "or physical violence." Defendant points to the fact that the jury asked the district court to clarify the meaning of *physical force*, and argues it "did not receive a meaningful response." But as previously stated, the district court properly answered the jury's question by instructing it to use its "common sense" in determining whether Defendant used *physical force*, and the State presented sufficient evidence that Defendant used such force. Reviewing the entire record and "placing the jury instructions in the context of the individual facts and circumstances of the case," Defendant fails to establish that his fourth-degree CSCM conviction was "the result of a plain miscarriage of justice." *See Candelaria*, 2019-NMSC-004, ¶ 31 (internal quotation marks and citation omitted).

**CONCLUSION**

**{21}** For the forgoing reasons, we affirm each of Defendant's CSCM convictions.

**{22} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Chief Judge**

**WE CONCUR:**

---

[5]Of course, in those cases where a defendant's use of physical violence is at issue, it may very well be a necessary element.

**J. MILES HANISEE, Judge**

**JENNIFER L. ATTREP, Judge**